Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 4056 | **DATE** | 3/21/2002 |
| **CASE TITLE** | LINDA J. CALHOUN vs. JOHN J. POTTER, Postmaster General | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] IT IS HEREBY ORDERED AND ADJUDGED that defendant John E. Potter's motion for summary judgment [24-1] is granted and plaintiff Calhoun's motion for judgment on the pleadings is denied. This case is terminated. This is a final and appealable order. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAR 2 2 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 33 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| CG | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LINDA J. CALHOUN ) | |
| ) | **DOCKETED** |
| ) | MAR 2 2 2002 |
| Plaintiff, ) | |
| ) | No. 00 C 4056 |
| v. ) | Judge Ronald A. Guzman |
| ) | |
| JOHN E. POTTER, Postmaster General, ) | |
| ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

## INTRODUCTION

This case is now before the court upon defendants' motion for summary judgment and plaintiff's motion for judgment on the pleadings. This is an action brought by a Postal Service employee alleging employment discrimination. The defendant is John E. Potter, in his official capacity as Postmaster General of the United States Postal Service. For the reasons set forth below defendant's motion for summary judgment is granted and plaintiff's motion for judgment on the pleadings denied.

## STATEMENT OF FACTS

The facts are taken from the parties' statements of material facts pursuant to Local Rule 56.1. Pro se Plaintiff, Linda Calhoun ("Calhoun"), has worked for the United States Postal Service's South Suburban facility for seventeen years and is currently employed there.

1

Defendants Rule 56. 1 Statement, ¶ 5. Prior to 1994, she was the subject of seven disciplinary suspensions by her supervisors. *Id.* ¶ 8. Most of the disciplinary actions were due to Calhoun's failure to follow the instructions of her supervisors. *Id.* Calhoun grieved each and every disciplinary action through her union. *Id.,* ¶ 9. In 1994 and later, the disciplinary actions against Calhoun continued. *Id.* ¶¶ 13, 14, 16, 17, 21, 23, 25, 26, 33. In September 1994, Calhoun received a latter of warning from the Postal Service for Failure to Maintain a Regular Schedule, citing fifteen (15) instances where she failed to report for work. *Id.,* ¶ 13. Then in February 11, 1995, Calhoun was issued a seven-day suspension for failing to report for work on fifteen (15) additional occasions. *Id.* ¶ 14. Calhoun filed a union grievance against this seven-day suspension stating that she was being "stalked" by an ex-boyfriend which caused her to miss work and the suspension was reduced to a letter of warning. *Id.* ¶ 15.

In September 1995, Calhoun was issued a notice of a fourteen day suspension for twelve (12) additional instances when she was absent from work. *Id.* ¶ 16. The Postal Service unilaterally reduced this suspension to seven days. *Id.*

In January 1996, Calhoun was again served with a notice of a fourteen day suspension for (1) being absent from her assignment without permission, and (2) being disrespectful to a supervisor. *Id.* ¶ 17. Two days prior to the suspension taking effect, it was reconsidered. *Id.*

In addition to grieving the actions through the union, in January 1996, Calhoun for the first time filed an employment discrimination complaint with the Postal Service claiming that her discipline was the object of unlawful discrimination. *Id.,* ¶ 18. The reason given for the complaint was:

I served a seven day suspension from 10/01/95 to 10/16/95. Due to

2

> management error issuing a fourteen [sic] (14) day suspension that should have originally been a seven (7) day suspension due to a settlement from Step III. The seven (7) day suspension on 10/08/95 for an unlisted infraction. No written notice of charges and no ten day notice.

*Id.* Calhoun believed that orders were given from management to issue the discipline "[b]ecause I was fighting my grievances." *Id.* ¶ 19.

In April 1997, the Postal Service again issued Calhoun a notice of a fourteen-day suspension for conduct unbecoming a postal employee. *Id.,* ¶ 21. Calhoun's union grievance against this proposed suspension was settled when the Postal Service agreed to rescind the suspension in its entirety. *Id.,* ¶ 22.

In May 1997, the Postal Service issued Calhoun yet another notice of a fourteen-day suspension for failure to follow instructions and failure to report for duty as scheduled, because Calhoun refused to work on a holiday as ordered. *Id.,* ¶ 23. The union grieved this suspension claiming that it was too punitive in nature and as a settlement the grievance was rescinded. *Id.,* ¶ 24.

In July 1997, Calhoun was placed in emergency off-duty status for failure to follow instructions. *Id.,* ¶ 25. As settlement of the subsequent grievance, the disciplinary action was rescinded and Calhoun received lost pay. *Id.*

In August 1997, the Postal Service issue Calhoun another fourteen-day suspension notice. *Id.,* ¶ 26. This suspension had three bases: (1) failure to follow instructions, (2) conduct unbecoming a postal employee, and (3) discourtesy and disrespectful to a postal supervisor. *Id.* Again a grievance was filed and settled with the reduction of the suspension to a letter of warning with full back pay for the dates served on suspension. *Id.,* ¶ 27.

3

In August 1998, Calhoun filed a complaint of discrimination with the Postal Service alleging unlawful treatment based upon her race, color, and sex. *Id.,* ¶ 28. The reason specified was:

> Retaliation for filing prior EEO. By discriminating against me in work assignment, approval of leave, Discrimination resulting in disciplinary action due to retaliation.

*Id.*

In November 1998, the Postal Service issued Calhoun a removal notice. *Id.,* ¶ 33. The basis for the removal notice was another instance of failure to follow instructions, specifically an order from her direct supervisor, and for failure to maintain a regular schedule, which was supported by another ten instances when Calhoun was absent from work. *Id.* Calhoun agreed that she refused to follow a direction given to her by supervisor because she disagreed with his instruction, felt it was not within her job description, and she could not understand why he made the instruction to her. *Id.,* ¶ 34. Calhoun, again grieved her dismissal, and Calhoun's removal was reduced to a seven day suspension with a payment of three weeks' back pay for time served on suspension. *Id.,* ¶ 35. In March 1999, Calhoun filed her third complaint of discrimination with the Postal Service. *Id.,* ¶ 36. Calhoun claims that she was discriminated against on the basis of her color race and sex in violation of Title VII of the Civil Rights Act of 1964 and her disability in violation of the American with Disabilities Act.

The EEOC Office of Federal Operations issued Notices of Right to Sue on April 3, 2000, April 5, 2000 and June 2, 2000. All three charges were consolidated by Plaintiff under this one lawsuit (Plaintiff's complaint ¶ 8(b)) which was filed on July 5, 2000.

4

# ARGUMENT

1. **Summary Judgment.**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions of file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment carries the initial burden of demonstrating an absence of evidence to support the position of the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2510-11, 91 L. Ed. 2d 202 (1986). The non-moving party must then set forth specific facts showing there is a genuine issue of material facts and that the moving party is not entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322, 106 S. Ct. at 2252.

When the non-moving party bears the burden of proof on an issue, that party may not rest on the pleadings and must instead show that there is a genuine issue of material fact. *Vanasco v. National-Louis University*, 137 F.3d 962, 965 (7th Cir. 1998). The opposing party may not merely allege in a general or conclusory fashion that issues of fact exist or might exist. Federal Rule of Civil Procedure 56(e); *Bragg v. Navistar Int'l Transp. Corp.*, 164 F.3d 373, 378 (7th Cir. 1998). Finally, even where a factual dispute exists, unless it is outcome determinative, summary judgement will not be precluded. *Harris Trust and Sav. Bank v. Edelson*, 859 F.2d 553 (7th Cir. 1988).

2. **Plaintiff's Individual Disparate Treatment Claims Based on Her Color & Race.**

As mentioned above, the plaintiff in this case is proceeding *pro se*. A *pro se* complaint is held to a "less stringent" standard than formal pleadings drafted by lawyers. *Haines v. Kerner*,

5

404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed.2d 652 (1972). In this case, plaintiff's submissions in response to the defendant's motion for summary judgment come very close to violating Local Rule 56.1 because she has not properly authenticated the documents she relies upon and has failed to attach excerpts from her deposition to support her assertions. Nevertheless, we have evaluated plaintiff's arguments is response to defendant's motion for summary judgment.

It is undisputed that Calhoun has failed to present any direct evidence of discrimination, either of substantive discrimination or retaliation. "Direct evidence is that which can be interpreted as an acknowledgment of the defendant's discriminatory inference of intentional discrimination." *Kormoczy v. Secretary of the United States Dept. of Housing & Urban Dev.*, 53 F.3d 821, 824 (7th Cir. 1995). Calhoun has no evidence that anyone within the postal service manifested an intent to discriminate against her. When specifically asked at her deposition if any direct evidence existed, she answered "No." (Defendant's Exhibit C at 35, 91). Thus, we analyze plaintiff's claims under the indirect method.

To show discrimination indirectly, Calhoun must make out a *prima facie* case by showing the following : (1) she is a member of a protected class; (2) she was performing her job in a satisfactory manner; (3) she was subjected to an adverse employment action; and (4) similarly situated employees were treated more favorably. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 92 S. Ct. 1817 (1973) and *Hoffman-Dombrowski v. Arlington Int'l Racecourse, Inc.*, 254 F.3d 644, 650 (7th Cir. 2001). Once the plaintiff meets this burden, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for the decision which adversely affected the employee. *McDonnell Douglas*, 411 U.S. at 802. Once the defendant has set forth a facially nondiscriminatory reason for the decision, the 'factual inquiry proceeds to a new level of

6

specificity." *Texas Dept. Of Community Affairs v. Burdine*, 450 U.S. 248, 255, 101 S. Ct. 1089, 1094, 67 L. Ed. 2d 207 (1981). The plaintiff assumes the burden to prove that the employment decision was the result of intentional discrimination based on an impermissible motive. *Burdine*, 450 U.S. at 256. The plaintiff can prevail either directly by proving that the employer acted with a discriminatory motive or indirectly by showing that the stated reason for the discharge was a "pretext for the sort of discrimination prohibited by [Title VII]." *McDonnell Douglas*, 411 U.S. at 804.

Here, plaintiff has not submitted sufficient evidence that she was performing her job satisfactorily on the numerous occasions she was disciplined. Calhoun must prove by objective evidence that she was performing her job satisfactorily. She must do more than challenge the judgment of her supervisors through her own self-interested assertions. Calhoun's perception of herself is not relevant. It is only the perception of the decision maker that is relevant. *Karazanos v. Navistar Intern. Transp. Corp.*, 948 F.2d 332, 337-8 (7th Cir. 1991) (*Quoting Weihaupt v. American Medical Ass'n*, 874 F.2d 419, 428 (7th Cir. 1989)). Calhoun must produce evidence tending to prove that her employer's proffered reasons are factually baseless, were not the actual motivation for the discharge in questions or were insufficient to motivate the discharge. *Gordon v. United Airlines, Inc.*, 246 F. 3d 878, 888-89 (7th Cir. 2001). Attempts to shift blame for the reasons for disciplinary actions are not useful in opposing summery judgment. *See Schultz v. General Elec. Capital Corp.*, 37 F.3d 329, 334 (7th Cir. 1994). Calhoun's failure to present evidence that her job performance was satisfactory precludes her from surviving summery judgment.

Specifically, Calhoun's two seven-day suspensions resulted from unsatisfactory job

7

conduct. The first suspension was the result of the third action taken for Calhoun's failure to come to work on time. After receiving nothing but a warning for the first thirty times, the Postal Service found that thirty first through fourth times merited a seven-day suspension. The second suspension came as a reduction of a removal notice and was for conduct of gross insubordination to which Calhoun readily testifies she committed. She cannot establish a satisfactory performance or conduct in light of the charges leading to her serving the suspensions.

Finally, Calhoun has not and cannot identify any similarly situated persons outside of her alleged protected classes who received treatment different than her own. To do this she must show persons who were either non-black, male, and/or not suffering from mental stress received more favorable treatment. To show that others employees were similarly situated, Calhoun must not only show that they engaged in similar conduct and were not subjected to similar discipline. She must also show that the same person or persons who imposed discipline upon her failed to impose similar discipline on the similarly situated employees outside of her protected class. *See Timms v. Frank,* 953 F.2d 281, 287 (7th Cir. 1992). This Calhoun cannot do. There is no evidence other than Calhoun's conclusory statements that others who were similarly situated were treated more favorably. The record lacks direct evidence or indirect evidence that plaintiff was suspended or otherwise damaged in her employment because of her race or color.

Even if Calhoun could establish a *prima facie* case for summary judgment purposes, her claim would fail because defendant has offered a legitimate non-discriminatory reason for her suspensions, and Calhoun has offered no evidence of pretext. To establish pretext, Calhoun must "produce evidence from which a rational fact finder could infer that the postal service lied about its proffered reasons" for the adverse employment actions. *Weisbrot v. Medical College of*

8

*Wisconsin,* 79 F. 3d 677, 682 (7th Cir. 1996). "Pretext means a lie, specifically a phony reason for some action." *Plair v. E.J. Brach & Sons, Inc.,* 105 F. 3d 343, 348 (7th Cir. 1997). "[A] reason honestly described but poorly founded is not a pretext as that term is used in the law of discrimination. *Kariotis v. Navistar Int'l Transp., Corp.,* 131 F. 3d 672, 677 (7th Cir. 1997).

Here, Calhoun admits that she was in fact absent or late and she did in fact not follow instructions. To be sure, in some instances her suspensions were reduced by her union but it is undisputed that the underlying facts supporting defendant's decision to discipline were in fact present. Calhoun's discrimination claims, therefore, cannot survive summary judgment.

### 3. Retaliation

Title VII makes it unlawful "for an employer to discriminate against any of his employees...because he opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3 (West 1998). Because Calhoun cannot produce any direct evidence of retaliation, she must resort to indirect method of proof. She must produce admissible evidence by which she can prove the following: (1) she engaged in protected expression; (2) she suffered an adverse job action; and (3) there is a causal link between the protected expression and the adverse job action. *See Logan v. Kautex Textron North America,* 259 F. 3d 635, 640 (7th Cir. 2001) and *Krause v. City of LaCrosse,* 246 F.3d 995, 1000 (7th Cir. 2001). If Calhoun succeeds at establishing a *prima facie* case, defendant must provide a non-discriminatory reason for its conduct, which if unrebutted by Calhoun, would compel a grant of summary judgment in defendant's favor. *See Rennie v. Dalton,* 3 F. 3d 1100, 1108-09 (7th Cir. 1993). Taking the facts in a light most favorable to Calhoun we find that Calhoun has satisfied elements one and two. Calhoun, however, cannot satisfy the third element of her *prima facie case* because she cannot

establish the "causal link" necessary to ultimately prevail on the merits. To demonstrate the "causal link" between the protected expression and an adverse action, Calhoun must prove that the defendant would not have taken the adverse action "but for" the protected expression. *Johnson v. University of Wis.-Eau Claire,* 70 F.3d 469, 479 (7th Cir. 1995). The "causal link" cannot be presumed. The plaintiff must prove it as an element of her cause of action. The mere existence of a discrimination complaint does not provide, as a matter of law, that the complaint is a motive for retaliation. *Johnson v. Sullivan,* 945 F.2d 976, 980-981 (7th Cir. 1991).

Calhoun claims that adverse actions were taken against her as the result of retaliation for filing her first two discrimination complaints, one on January 30, 1996 and the other on August 18, 1998. She offers no evidence linking either disciplinary action to the filing of a discrimination complaint other than the timing. In order to establish a causal connection via mere temporal proximity, the employer's adverse action must follow fairly soon after the employee's protected conduct. *Sweeney v. West,* 149 F.3d 559, 5557 (7th Cir. 1998). The lengthy temporal sequence at issue here—approximately fourteen months does not, by itself, establish the required nexus. *See e.g. Davidson v. Midelfort Clinic, Ltd.,* 133 F. 3d 499, 511 (7th Cir. 1998)(holding that a 5-month period between protected expression and adverse employment action does not, by itself suggest a causal link); *Hughes v. Derwinski,* 967 F. 2d 1168, 1174-75 (7th Cir. 1992)(four months); *Juarez v. Ameritech Mobile Communications, Inc.,* 957 F. 2d 317, 321 (7th Cir. 1992)(nearly six months). The adverse actions nearest to the dates of her complaints are the April 14, 1997 fourteen-day suspension and the November 25, 1998 removal notice. After her first complaint, no adverse action was taken against Calhoun for more than fourteen months. After filing her second discrimination complaint, no adverse actions were

taken for more than three months. These lengths of time are too tenuous to support her *prima facie* case. In the absence of any other evidence of a causal link, these time periods are insufficient proof of causation.

Moreover, the removal action, which was brought more than three months after filing her complaint, was based upon her own conduct, namely failing to follow a supervisor's instructions to obtain equipment. The notice cites Calhoun's failure to find the equipment and her responses that "they don't need hampers" and "I am not going to find them and you can't make me." The notice further stated that Calhoun went on her break rather than seek out the needed equipment. Calhoun, in her deposition, admitted all the pertinent facts set forth in the removal notice. Calhoun stated that she was instructed to obtain hampers. (Calhoun Dep.) at 56. She testified that she told her supervisor that there was no need for the equipment he requested. (Calhoun Dep.) at 56,58. She also testified that she told her supervisor, "you don't tell me what to do. (Calhoun Dep.) at 58. In addition, for the fourth time, Calhoun was given a disciplinary action for failing to maintain her regular work schedule. Calhoun has failed to establish the necessary causal link to prove a case of retaliation discrimination. Calhoun has presented no evidence from which a reasonable jury could infer that defendant lied when it reprimanded plaintiff for attendance and insubordination reasons or that such reprimands were because plaintiff filed her EEOC complaints.

### 4. Plaintiffs's Illegal Handicap Discrimination Under the Rehabilitation Act.

In plaintiff's *pro se* complaint she also complains that her rights under the American With Disabilities Act have been violated. Because plaintiff is a *pro se* postal work we assume she is proceeding under the Rehabilitation Act, 29 U.S.C. §§ 701-797(b). There is no evidence that

11

plaintiff has a physical impairment which substantially limits one or more of her major life activities, has a record of such impairment, or is regarded as having such an impairment. Plaintiff simply claims that she was under stress and suffers from a mental disability. In support of this alleged impairment plaintiff offers a Humana letter which indicates she was treated on one occasion for work related stress. This is insufficient to invoke the protection of the Rehabilitation Act and it is questionable whether this alleged disability ran its course via the underlying administrative process thus possibly depriving this court of jurisdiction to entertain plaintiff's claims on this issue. Hence, this claim is dismissed.

### 5. Plaintiff's sexual harassment claim.

Plaintiff has also alleged that she was harassed sexually by defendant in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1). Plaintiff complains of one incident only where a co-worker Scott Dwyer "[i]s always putting his face so close to my face that he could kiss me on the lips." Sexual harassment is actionable under Title VII only if it is "so severe or pervasive as to alter the conditions of [the victim's] employments and create an abusive working environment." *Hostetler v. Quality Dining, Inc.,* 218 F. 3d 798, 806 (7th Cir. 2000). In order to establish a *prima facie* case of hostile environment sexual harassment, a plaintiff must show that: (1) he was subjected to unwelcome sexual harassment in the form of sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature; (2) the harassment had the effect of unreasonably creating an intimidating, hostile or offensive working environment that affected seriously the psychological well-being of the plaintiff; and (4) there is a basis for employer liability. *See Parkins v. Civil Constructors of Illinois, Inc.,* 163 F. 3d 1027, 1032 (7th Cir. 1998). Whereas other disparate treatment claims may scrutinize discrete harms such as hiring or discharge, a

12

hostile work environment claims analyzes a workplace environment as a whole to discover whether it is "abusive." *Harris v. Forklift,* 510 U.S. 17, 22, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1983); *see also Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 64, 106 S. Ct. 2399, 91 L. Ed. 49 (1986). Calhoun's single allegation that Dwyer "put his face close to [Calhoun's] is insufficient to state a claim under Title VII. Hence, summary judgment is granted in defendant's favor.

We will briefly address what amounts to the plaintiff's motion for judgment on the pleadings. The lack of any meaningful legal and factual analysis defeats plaintiff's motion. Plaintiff has essentially denied her absences and tardiness based upon the fact that her days off were deducted from her accrued leave and she claims that her employment record is irrelevant. Obviously, her employment record is relevant to defendant's decision to suspend her or dock her pay. To be sure, once plaintiff grieved her suspensions the union stepped in and in some instances had these suspensions reduced but it remains undisputed that the underlying incidents did in fact take place. For the numerous reasons discussed above, plaintiff has failed to show that she is entitled to a judgment as a matter of law on her claims of discrimination, retaliation, and age discrimination.

## CONCLUSION

For the reasons set forth above defendant's motion for summary judgment is granted and Calhoun's motion for judgment on the pleadings denied. This case is hereby terminated. This is a final and appealable order.

SO ORDERED.   ENTERED: *Ronald A. Guzman*

**Ronald A. Guzman**
**United States Judge**